| | |
|---|---|
| IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH<br><br>CENTRAL DIVISION | |
| **JEREMY KEE,**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**R-G CROWN BANK; FIFTH THIRD BANK; FEDERAL NATIONAL MORTGAGE ASSOCIATION; MONA BURTON; KATHERINE NORMAN HANSEN; DARREN REID; CRAIG STEWART; HOLLAND & HART, LLP; DOES 1-100,**<br><br>    **Defendants.** | **ORDER ISSUING INJUNCTION AND ORDER OF DISMISSAL**<br><br><br>Case No. 2:08-cv-00837<br><br>Judge Dee V. Benson |

    This matter came before the Court on Fifth Third Bank ("Fifth Third"), successor in interest to R-G Crown Bank ("R-G Crown"), Federal National Mortgage Association ("Fannie Mae"), Mona Burton, Katherine Norman Hansen, Darren Reid, and Holland & Hart, LLP's (collectively "the Defendants") Motions for Injunction, and Plaintiff's Motion to Withdraw. The Court heard oral argument on the motions on June 12, 2009. At the conclusion of the hearing, the Court asked counsel for Mona Burton, Darren Ried, Katherine Norman Hansen, and Holland & Hart, LLP, (the "Attorney Defendants") to draft an order consistent with the Court's oral findings and conclusions. On July 2, 2009, counsel's proposed order was served on all parties. On July 27, 2009, Plaintiff filed a response and objection to the proposed order, and on July 30, 2009, the Attorney Defendants responded to Plaintiff's objections.

    The Court, having reviewed the parties briefs and supporting documents on file with the Court, and having considered the Plaintiff's objections to the proposed order as well as Defendants' response, hereby ORDERS, ADJUDGES, AND DECREES:

    For the reasons stated by the Court at the June 12, 2009, hearing, and set forth in further detail below, the Defendants' Motions for Injunction are GRANTED. Plaintiff is hereby precluded from directly contacting, or attempting to contact in any way, including, but not limited to, in person contact, and contact by telephone, fax, and

email, any of the Defendants or their employees, officers, directors, agents, representatives, or lawyers (collectively, "Agents"), Anderson & Karrenberg or its Agents, and Parsons Behle & Latimer or its Agents.  If Plaintiff, pursuant to some legal requirement, is required to communicate directly with any of the Defendants' or their counsel, including Anderson & Karrenberg and Parsons Behle & Latimer, such communication shall be made through Plaintiff's attorney.  Further, in light of the facts set forth below, the Court DENIES Plaintiff's Motion to Withdraw and requires Mr. Steffensen to continue to represent Plaintiff until final conclusion of this case or until substitute counsel enters an appearance.  Further, Plaintiff may not represent himself *pro se* in this case or in an appeal from this or any other decision in this case.

## BACKGROUND

In or around October 2001, Plaintiff obtained a mortgage loan from Matrix Financial Services Corporation ("Matrix") and executed a note in favor of Matrix ("Note").  The Note was secured by a trust deed on Plaintiff's real property ("Trust Deed").  R-G Crown subsequently acquired the rights to service the loan, and the Note and Trust Deed were assigned to R-G Crown.

In or around April 2006, a dispute arose between Plaintiff and R-G Crown, and Plaintiff filed two small claims court affidavits against R-G Crown.  Both cases were dismissed for no cause of action.  This decision was upheld on Plaintiff's appeal to the district court.  Plaintiff then filed two more small claims court affidavits against R-G Crown, this time alleging violations of the Real Estate Settlement Procedures Act ("RESPA").  Plaintiff also filed a small claims court action against Fannie Mae and another individual alleging violations of RESPA and the Fair Debt Collection Practices Act ("FDCPA").  These actions were removed to federal district court and consolidated into one case: *Kee v. R-G Crown Bank et al.*, Civ. No. 2:06-CV-602 (J. Waddoups) (the "RESPA action").  In April 2007, Plaintiff hired counsel who amended the Complaint in the RESPA action, including claims relating to Matrix's authority to originate loans in Utah.  Shortly after amending the Complaint, Plaintiff stipulated to dismiss with prejudice all of his claims against Matrix, which included claims relating to Matrix's authority to originate loans in Utah.

On or about November 1, 2007, Fifth Third acquired R-G Crown and all rights and interests in the Note and Trust Deed passed to Fifth Third.  Pursuant to Plaintiff's failure to make any payments on the Note since 2006, Fifth Third caused its attorneys, Mona Burton, Katherine Hansen, Darren Reid, and Holland & Hart, LLP ("Holland &

Hart") to file a notice of default and begin non-judicial foreclosure proceedings on Plaintiff's property. Fifth Third's attorneys posted the statutory required notice of default and published a notice of trustee's sale, stating the sale was to be held on October 31, 2008. At Plaintiff's request, pay-off or reinstatement amounts were provided to Plaintiff, which amounts included attorneys' fees.

Three days before the date of sale, Plaintiff moved for a preliminary injunction in the RESPA action, seeking to enjoin the trustee's sale until the district court determined whether the Note and Trust Deed were valid. The district court denied the motion, finding the issue of Matrix's licensure and its ability to originate loans had been fully adjudicated and that any attempt to re-litigate that issue was barred. Plaintiff's property was sold at a trustee's sale on October 31, 2008.

The RESPA action was substantially resolved in March 2009 when Judge Waddoups issued a memorandum decision granting summary judgment for the defendants in that action on fifty (50) of Plaintiff's fifty-one (51) RESPA claims, and on all Plaintiff's other claims. Judge Waddoups also issued an injunction enjoining Plaintiff from "filing additional suits for all causes of action that were or could have been included in [the RESPA] lawsuit or one of the other five [small claims] lawsuits. [Plaintiff] is also enjoined from bringing any of the same causes of action that have already been raised in his six lawsuits, provided that the event giving rise to the cause of action occurred on or before October 30, 2008." *Kee v. R-G Crown Bank et al.*, Civ. No. 2:06-CV-602.

On denial of the motion for preliminary injunction in the RESPA action, Plaintiff filed this action. In this action, Plaintiff alleges that the Defendants' actions in connection with the non-judicial foreclosure of his property violated the Fair Debt Collection Practices Act ("FDCPA") and the Utah Consumer Sales Practices Act ("UCSPA"). Plaintiff also claims Defendant Darren Reid, the trustee, and Defendant Holland & Hart breached a duty owed to Plaintiff by failing to postpone the trustee's sale of his property and investigate his claims that the Note and Trust Deed were invalid. Plaintiff further claims that the Note and Trust Deed constitute illegal contracts, and are thus null and void, because the loan originator, Matrix, did not comply with section 70D-1-10 of the Utah Code. Based on this allegation, and the allegation that Mr. Reid and Holland & Hart failed to properly notice the trustee's sale on the property, Plaintiff seeks a declaratory judgment that the Note and Trust Deed were null and void and unenforceable. Plaintiff further alleges that Fifth Third violated section 57-1-31 of the Utah Code by including attorneys' fees not actually incurred for the enforcement or collection of the Note in its calculation of the payment required to cure the

default on the Note.  Finally, Plaintiff alleges that the Defendants slandered his title by filing notices of default when the Note and Trust Deed were invalid and unenforceable.  Defendants Mona Burton, Katherine Hansen, Darren Reid, and Holland & Hart (collectively the "Attorney Defendants") retained Thomas R. Karrenberg and Anderson & Karrenberg to represent them in this action,[1] and Defendants Fannie Mae and Fifth Third retained Elizabeth S. Whitney and Parsons Behle & Latimer.

After filing the RESPA action, Plaintiff began making frequent and harassing phone calls to employees at Fifth Third, Mona Burton, Katherine Hansen, and other staff and attorneys at Holland & Hart's offices in Salt Lake City, Utah.  Plaintiff made numerous calls in one day, often only minutes apart, and if he could not speak with someone he left numerous messages.  Plaintiff was frequently foul mouthed to the recipient of the call and made threats to bring additional unfounded lawsuits against them regardless of their involvement in the RESPA litigation, this litigation, or their knowledge of his issues generally.

Immediately prior to the trustee sale, Plaintiff began contacting attorneys and staff at Holland & Hart's offices in Denver, Colorado.  As with his contacts with the Salt Lake City office, Plaintiff was abusive and rude, and indiscriminate as to whom he communicated with and at whom he hurled abuse.  In addition to contacting Craig Stewart, a partner at Holland & Hart, and Larry Wolfe, the managing partner at that time, neither of whom had any familiarity with Plaintiff, Plaintiff's RESPA action, or the foreclosure, Plaintiff made abusive and harassing calls and left abusive and harassing messages with a staff member responsible for marketing and a staff member responsible for the office's supplies.  Despite being advised that these contacts were inappropriate, Plaintiff continued to make these contacts.

Since Mr. Karrenberg and Anderson & Karrenberg entered an appearance and filed a motion to dismiss on behalf of the Attorney Defendants in this action, Plaintiff has included Mr. Karrenberg and the staff at Anderson & Karrenberg in his abusive and harassing contacts.  Namely, Plaintiff has sent Mr. Karrenberg several lengthy faxes, and threatened to include Mr. Karrenberg in further upcoming lawsuits.  Plaintiff has been abusive and foul mouthed to both Mr. Karrenberg and the staff at Anderson & Karrenberg.

---

[1] Craig Stewart was named as a defendant in this action but was never served with a copy of the summons or complaint.

4

On one occasion, Mr. Karrenberg attempted to speak with Plaintiff to inform him that, as a represented party, Mr. Karrenberg could not speak with him. Plaintiff would not listen. He interrupted Mr. Karrenberg — described Mr. Karrenberg using profanity — and hung up. Plaintiff made numerous additional calls to Anderson & Karrenberg that afternoon and was rude and abusive to the staff. Mr. Karrenberg eventually instructed his staff to simply hang up when Plaintiff called again.

After each contact, Mr. Karrenberg contacted Plaintiff's counsel, Mr. Steffensen, and requested that Mr. Steffensen get control of Plaintiff and instruct Plaintiff that it is inappropriate to contact the Defendants, Mr. Stewart, Mr. Karrenberg, or anyone else at Holland & Hart or Anderson & Karrenberg, and to refrain from making any further contacts. Despite receiving repeated warnings, Plaintiff continued to contact Mr. Karrenberg and Anderson & Karrenberg.

A couple of months after Fannie Mae and Fifth Third retained Parsons Behle & Latimer ("Parsons") and made appearances in this case, Plaintiff began making abusive, harassing, and profane calls to various employees of Fannie Mae, Fifth Third, and various employees of Parsons, including lawyers, administrative staff, receptionists, switchboard operators, and secretaries. Only two of the numerous people Plaintiff contacted at Parsons knew anything about Plaintiff or his lawsuits. Plaintiff's calls to employees of Parsons have been so numerous and threatening that they caused one receptionist to file a police report with the Salt Lake City Police Department, a switchboard operator to shut down her computer and stop taking calls, and the firm to post security guards at the reception desk. On one occasion, Plaintiff engaged an employee of Parsons, who works in the word processing department, in a long and rambling conversation lasting more than eighteen (18) minutes in which Plaintiff interspersed his irrational demands with extreme profanities and frequent outbursts of rage.

## **DISCUSSION**

### I.

The Court finds remarkable the sheer number of calls that the Plaintiff makes, sometimes only minutes apart from one another, and Plaintiff's extremely abusive and profane language. "Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions in appropriate circumstances." *Ford v. Pryor*, 552 F.3d 1174, 1180 (10th Cir. 2008) (citing *Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007)); *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989) ("A district court has the power under

28 U.S.C. § 1651(a) to enjoin litigants who abuse the court system by harassing their opponents."); *see also* 28 U.S.C. §1651(a) (2000).  Indeed, it is appropriate to issue an injunction to prevent harassing and abusive contacts, including repeated phone calls and abusive writings.  *Lovcen Constr. Co., Inc. v. Culbreth*, 601 N.Y.S.2d 286, 287 (N.Y. App. Div. 1993) (granting "an injunction barring respondent from making further harassing telephone calls to appellants"); *Webber v. Gray*, 307 S.W.2d 80, 84 (Ark. 1957) (granting an injunction restraining defendant from writing, mailing, or otherwise delivering numerous threatening and slanderous notes to plaintiff and plaintiff's family and acquaintances); *Town of Brookline v. Goldstein*, 447 N.E.2d 641, 645 (Mass. 1983) (finding that "the threat of continued harassment of town officials and employees at their homes and places of employment by telephone calls and personal visits constituted a basis for injunctive relief"); *Werner v. State of Utah*, 32 F.3d 1446, 1448-49 (10th Cir. 1994) (finding petitioner's behavior was abusive where *pro se* petitioner refused to accept mailings from the court; wrote threats, obscenities, and profanities on the refused mail; and threatened to bring suit against the clerk of the court and the court for mishandling his appeal); *Thomas v. Sibbett*, 925 P.2d 1286, 1287 (Utah App. 1996) (same).

    Based on the foregoing facts, and those facts submitted to the Court by the Defendants in support of their motions for injunction, the Court hereby ORDERS that the Plaintiff is enjoined from making any further direct contact, including, but not limited to, in person contact and contact by telephone, fax, and email with any of the Defendants or their Agents, Anderson & Karenberg or its Agents, and Parsons Behle & Latimer or its Agents.  The Court finds Plaintiff's conduct is sufficiently abusive, offensive, outrageous, wrong, inappropriate, and completely improper under any rules of conduct associated with civil litigation in the United States courts that an injunction is required.  Plaintiff is warned that he will be held in criminal contempt if he violates any part of this injunction, with potential sanctions including fines, paying Defendants' attorneys' fees and costs, and imprisonment.

    The Court further ORDERS, *sua sponte*, that based on Plaintiff's outrageous, offensive, and abusive behavior, this case is dismissed in its entirety.  Plaintiff cannot do what he has done in this case and continue to be a litigant in this Court.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("A primary aspect of [the Court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.")  For that reason alone, aside from the Defendants' motions to dismiss, this case is DISMISSED on the basis of Plaintiff's personal outrageous and improper behavior.

**II.**

As an additional and independent basis for DISMISSAL, the Court rules that Defendants' Motions to Dismiss are meritorious and grants those motions completely for the reasons cited in the Defendants' briefs and as follows:

**A.     Plaintiff's Claims Under the Fair Debt Collection Practices Act**

The actions complained of by Plaintiff do not constitute in any way violations of the Fair Debt Collection Practices Act ("FDCPA").  A non-judicial foreclosure is not the collection of a debt under the FDCPA.  *See Santoro v. CTC Foreclosure Serv. Corp.*, 12 Fed. Appx. 476, 480 (9th Cir. 2001); *Brown v. Morris*, 243 Fed. Appx. 31, 35 (5th Cir. 2007); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004); *Heinemann v. Jim Walter Homes*, 47 F. Supp. 2d 716, 722 (N.D. W.Va. 1998); *Kafele v. Frank & Wooldridge Co.,* 108 Fed. Appx. 307, 307-08 (6th Cir. 2004); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).  The Defendants have not acted outside of the procedures of a non-judicial foreclosure in this case and, therefore, are not collecting a debt under the FDCPA.

In addition to the arguments made by the Defendants in their briefing, the Court adopts the reasoning of Judge Kimball in *Maynard v. Cannon*, Civ. No. 2:05-C-335 DAK, 2008 WL 2465466, (D. Utah June 16, 2008). Judge Kimball's analysis complies with the majority of circuits, which have held that a non-judicial foreclosure is not the collection of a debt, and that the Defendants, having not acted outside of the procedures of a non-judicial foreclosure in this case, are not debt collectors under the FDCPA.  All claims under the FDCPA based on allegations that the Defendants are collecting a debt or are debt collectors are appropriately dismissed as failing to state a claim upon which relief can be granted.

In addition, Defendants are not "debt collectors" within the meaning of the FDCPA because Plaintiff has not alleged that Fifth Third, through its predecessor-in-interest, R-G Crown, acquired the servicing rights to the Note after the Note was in default.  Under section 1692a(6)(F)(iii) of the FDCPA, a loan servicer such as Fifth Third is only a "debt collector" within the meaning of the FDCPA if it acquires the loan after it is in default.  Because Plaintiff has not actually alleged that Fifth Third acquired Plaintiff's Note after it was in default, there is not a sufficient basis in law to conclude that Fifth Third is a "debt collector" subject to the FDCPA.  In addition, the holder of the Note, which in this case is Fannie Mae, is not a "debt collector" within the meaning of section

1692(a)(6) of the FDCPA because Fannie Mae is not attempting to collect the debt of *another*, and thus, as a matter of law, the FDCPA allegation against Fannie Mae is also dismissed.

With respect to Plaintiff's claims for false representation in violation of the FDCPA, paragraph 80 of the Complaint is the only place where Plaintiff alleges any false representations by the Defendants in violation of the FDCPA. That paragraph alleges the payoff amounts provided by Defendants were false representations in violation of the FDCPA because no amount was due and owing on the Note, and the payoff amounts included attorneys' fees and failed to credit Plaintiff for certain amounts Plaintiff claims to have paid.

Plaintiff's claims for false representation in violation of section 1692e of the FDCPA fail because Plaintiff is barred from claiming the Note and Trust Deed are invalid and unenforceable because that issue was resolved in the RESPA action. "Issue preclusion 'prevents the relitigation of issues that have been once litigated and determined in another action even though the claims for relief in the two actions may be different.'" *Oman v. Davis School Dist.*, 194 P.3d 956, 966 (Utah 2008) (quoting *Penrod v. Nu Creation Crème, Inc.*, 669 P.2d 873, 875 (Utah 1983). The issue of Matrix's ability to issue loans in Utah and the validity and enforceability of the Note and Trust Deed were resolved in the RESPA action. The doctrine of *res judicata* precludes Plaintiff from relitigating this issue. *See Brooks v. Barbour Energy Corp.*, 804 F.2d 1144, 1146 (10th Cir. 1986) (". . . dismissal by stipulation and approved by the court with prejudice is res judicata - barring a later lawsuit on the same transaction or occurrence.") All Plaintiff's claims based on allegations that the Note and Trust Deed are invalid and unenforceable, including this claim relating to violation of the FDCPA, are dismissed on those grounds.[2]

Plaintiff's allegations relating to the inclusion of attorneys' fees in the payoff amounts and the failure to credit Plaintiff for a payment he claims he made are insufficient and do not state any violation of the FDCPA because: (1) it was clearly and fairly communicated that the payoff included attorneys' fees, (2) the dispute relates to the reasonableness of the attorneys' fees, (3) this is merely an attempt to collect a debt that Plaintiff disputes he owes, and (4) there is no allegation that the failure to credit was knowing or intentional. Plaintiff's allegations do not constitute violations of section 1692e of the FDCPA. *See Bull v. Asset Acceptance, LLC.*, 444 F. Supp. 2d 946, 949 (N.D. Ind. 2006); *Fields v. Wilbur Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004); *Ducrest v. Alco*

---

[2] All Plaintiff's claims based on allegations that the Note and Trust Deed are invalid and unenforceable for failure to comply with Utah Code Ann. § 70D-1-10 also fail because a failure to comply with that statute does not result in invalidation of a note.

*Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996); *Bleich v. Revenue Maximization Group*, *Inc.*, 233 F. Supp. 2d 496, 500-501 (E.D.N.Y. 2002). All such claims are appropriately dismissed.

### B. Plaintiff's Claims Under the Utah Consumer Sales Practices Act

The actions complained of by Plaintiff do not constitute, in any way, violations of the Utah Consumer Sale Practices Act ("UCSPA"). The Defendants' requests for payment of amounts owed under the Note and/or inclusion of amounts owed for attorneys fees in the payoff amounts are not deceptive or unconscionable acts under the UCSPA. Plaintiff's allegation that Defendants acted deceptively in contravention of section 13-11-4 of the Utah Code fails as a matter of law because Plaintiff has not sufficiently pled a required element of the statute, that Defendants committed a deceptive act or practice "knowingly or intentionally." *See* Utah Code Ann. § 13-11-4(2) (2009); *see also Wade v. Jobe*, 818 P.2d 1006, 1016 (Utah 1991). Additionally, Plaintiff's allegations do not rise to the level of "unconscionability" as contemplated by section 13-11-5 of the Utah Code. Therefore, all claims based on the UCSPA are appropriately dismissed as failing to state a claim upon which relief can be granted.

### C. Plaintiff's Claims that Defendants Breached a Duty Owed to Plaintiff

The Court finds Plaintiff has not alleged Defendant Reid and Defendant Holland & Hart breached any duty owed to Plaintiff. Defendant Reid and Defendant Holland & Hart had no duty to postpone the foreclosure and sale of Plaintiff's property and investigate Plaintiff's claim that the Note and Trust Deed were invalid and unenforceable. That claim is also dismissed on those grounds.

### D. Plaintiff's Claim for Declaratory Judgment

As was previously discussed, Plaintiff's claim that the Note and Trust Deed are null and void and unenforceable is barred under the doctrine of issue preclusion because the issue of Matrix's ability to issue loans in Utah and the validity and enforceability of the Note and Trust Deed were resolved in the RESPA action. Therefore, Plaintiff's claim seeking a declaratory judgment that the Note and Trust Deed is null and void and unenforceable is dismissed as failing to state a claim upon which relief can be granted.

### E. Plaintiff's Claim for Violation of the Trust Deed Note and Section 57-1-31 of the Utah Code

Plaintiff alleges that Fifth Third violated section 57-1-31 of the Utah Code and the "Trust Deed Note" because Fifth Third allegedly included attorneys' fees not incurred in the enforcement and collection of the Note in its calculation of the payment necessary to cure the default on the Note. This claim is dismissed as failing to state a claim upon which relief can be granted because Plaintiff has not alleged any "injury in fact," or any concrete or particularized damage that is anything more than hypothetical, and thus does not have standing to bring this claim under Article III of the U.S. Constitution. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997).

### F. Plaintiff's Claims for Slander of Title

Plaintiff's claim for slander of title is premised on his allegation that the Note and Trust Deed are invalid and unenforceable. As discussed above, Plaintiff cannot establish the Note and Trust Deed are invalid and unenforceable, and that claim is appropriately dismissed on that ground.

### III.

As an additional and independent basis for DISMISSAL, the Court rules that this action is in violation of Judge Waddoups Order which was issued in the RESPA action. That Order barred Plaintiff from filing additional lawsuits that essentially re-litigate the issues and claims of their action. *Kee v. R-G Crown Bank, et al.*, Civ. No. 2:06-CV-602 CW. Despite the fact this action was pending at the time Judge Waddoups' Order was issued, this case is clearly within the spirit of that Order, and this case is DISMISSED on those grounds as well.

DATED: September 1, 2009.

BY THE COURT

Dee V. Benson
United States District Judge

10

Case 2:08-cv-00837-DB   Document 87   Filed 09/02/09   Page 11 of 11